IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TOMMY LEWIS WARD,**<br><br>Petitioner,<br><br>v.<br><br>**EXECUTIVE DIRECTOR, ATASCADERO STATE HOSPITAL,**<br><br>Respondent. | **Case No. 1:11-cv-00651-LJO-MJS**<br><br>**FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Respondent, Executive Director of the Atascadero State Hospital, is hereby substituted as the proper named respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.  Respondent is represented in this action by David A. Eldridge, of the Office of the Attorney General for the State of California.

**I.      PROPER RESPONDENT**

The rules governing relief under 28 U.S.C. § 2254 require a person in custody pursuant to the judgment of a state court to name the "'state officer having custody'" of him as the respondent.  Ortiz-Sandoval v. Gomez, 81 F.3d 891, 894 (9th Cir. 1996) (quoting Rule 2(a) of the Rules Governing Habeas Corpus Cases Under Section 2254).

1

This person typically is the warden of the facility in which the petitioner is incarcerated. See Stanley v. California Supreme Court, 21 F.3d 359, 360 (9th Cir. 1994). Failure to name the petitioner's custodian as a respondent deprives federal courts of personal jurisdiction, see id., but the allegations of the petition are to be liberally construed when considering whether the proper respondent has been named, see Belgarde v. Montana, 123 F.3d 1210, 1214 (9th Cir. 1997). The "'state officer having custody'" also may include "'the chief officer in charge of state penal institutions.'" Ortiz-Sandoval, 81 F.3d at 894 (quoting Rule 2(a) advisory committee's note).

Petitioner is presently housed at Atascadero State Hospital in Atascadero, CA. Accordingly the Executive Director of Atascadero State Hospital is properly named as the respondent in this action. See Ortiz-Sandoval, 81 F.3d at 896; Sky v. Stolc, 2012 U.S. App. LEXIS 18515 (9th Cir. Aug. 31, 2012); see also Belgarde, 123 F.3d at 1214 (construing pro se habeas petitions with deference).

**II.     PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Fresno, following his conviction on October 18, 2000, for being a felon in possession of a firearm. (Lodged Doc. 1 at 459.) Petitioner was sentenced to a maximum period of confinement in a state mental hospital of 125 years to life. (Id. at 460B.)

Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate District, which affirmed the judgment of the lower court on October 29, 2002. (Pet., ECF No. 1, p. 1.) Petitioner then filed a petition with the Supreme Court of California which denied review on January 15, 2003. (Lodged Doc. 8.)

Petitioner proceeded to file collateral appeals of his conviction in state court. As relevant here, Petitioner filed petitions for writ of habeas corpus in Fresno County Superior Court, the California Court of Appeals, Fifth Appellate District, and the Supreme Court of California starting on Feb 11, 2005, and concluding April 12, 2006. (Lodged Docs. 9-11.) Three years later, between November 2009 and May 2010, Petitioner filed

several collateral motions. (Lodged Docs. 12-14.) Petitioner filed one final petition for habeas relief with the California Supreme Court in November, 2010; it was denied December 21, 2010. (Lodged Doc. 15.)

Petitioner filed the instant federal habeas petition on April 18, 2011. (Pet.) Petitioner alleges that he was denied due process because of (a) errors in the timing and foundation for sentencing, and (b) ineffective assistance of counsel due to defense counsel's failure to object to the bifurcation of the trial. (Id. at 4-6.)

Respondent filed an answer on November 21, 2011, and Petitioner filed a traverse on December 9, 2011. (ECF Nos. 16, 18.) Respondent asserts that the petition is untimely, but also addresses its merits.

### III.    STATEMENT OF FACTS[1]

**A. Appellant's history of mental illness and criminality.**

Appellant was diagnosed with paranoid schizophrenia over 20 years ago. His disease is characterized by paranoid delusions, distortions of thinking, inability to distinguish reality from his imagination, hallucinations, and resulting depression and anger, which led to at least 15 suicide attempts. Appellant's condition is partially managed by anti-psychotic medication. The medication, however, is not totally effective. Appellant frequently hears voices even when he is fully medicated. He was unable to maintain a job and has thus received Social Security Insurance payments for 20 years. Appellant was able to work running errands and doing odd jobs for Mary McGehee, who ran a boarding home for mentally handicapped individuals. This work was possible only because McGehee understood the challenges of the mentally ill.

Appellant first entered the criminal justice system when he was arrested for burglary in 1974. Doctors examining appellant while he was in custody determined that he was insane at the time of the burglaries and could not understand the nature of the charges against him. He was thus committed to Atascadero State Hospital.

Appellant was convicted in 1983 of exhibiting a weapon in the presence of a police officer. This conviction arose from an incident wherein appellant swung a crowbar at a teenager who was riding a bicycle. The police officer

---

[1]The Fifth District Court of Appeal's summary of the facts in its October 29, 2002 opinion is presumed correct.  28 U.S.C. § 2254(e)(1).

dispatched to the scene found appellant talking to himself on a street corner and shaking a signpost. Appellant then ran to his apartment. The officer heard several gunshots from the apartment and called for backup. At one point appellant exited the apartment with a gun. He was eventually apprehended without further incident. Appellant was muttering incoherently when officers entered his apartment.

In 1992, appellant caused an accident that was attributed to his reckless driving. He fled the scene, still driving in a reckless manner, backed his vehicle into a police car, then fled on foot. About a week before the charged events, appellant went "berserk" and jumped on the back of his elderly father, Bufford, knocking him down. Because of this incident, Bufford had appellant involuntarily committed for one day. Bufford knew that appellant was not supposed to possess firearms and implored him to keep his rifles locked up.

**B. The charged incident.**

Appellant lived in a house and his father, Bufford, lived in a motor home on the same plot of land. Samuel and Patsy were appellant's neighbors. Appellant was friendly to the Uptains and sometimes helped them. They regarded him as a good neighbor and had no knowledge of his mental illness. Patsy noticed appellant would occasionally leave for a few days after he and Bufford had argued.

The Uptains were home on the evening of May 26, 1999. At about 8:30p.m. they heard what sounded like a gunshot from the direction of the Ward property. Samuel went out to his porch, and from this vantage saw appellant exit the back door of the Ward house. The Uptains went to the motor home to check on Bufford, fearing he had been shot. They encountered Bufford standing near the door of his motor home. Samuel asked Bufford if he was all right, but heard no response. Samuel and Patsy both heard a gunshot and saw the flash from a gun's muzzle. Appellant shot Samuel in the forehead with a semi-automatic shotgun. He then shot Patsy in the head. The Uptains both moved to the other side of the motor home, fearful of more gunfire.

Bufford went inside the motor home to call 911. As he was doing so, Bufford heard a noise and went to shut the bedroom door. Appellant then shot Bufford in the shoulder with a .22-caliber rifle, a separate firearm than that used to shoot the Uptains. Appellant left, and Bufford succeeded in calling for help. When Bufford went outside to help Samuel, he tripped on appellant's dog, Ian. When the dog did not move, Bufford realized that appellant had shot Ian to death.

Appellant indicated to officers during a recorded statement that he knew he was not supposed to possess firearms because of his prior convictions.

4

> Samuel was rendered deaf in one ear, required stitches on his forehead and continues to suffer from vertigo and headaches. Patsy suffered scalp abrasions.

(ECF No. 16, Ex. A at 2-5.)

## IV. DISCUSSION

### A. Commencement of Limitations Period Under 28 U.S.C. § 2244(d)(1)(A)

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"). The AEDPA imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), *cert. denied,* 118 S.Ct. 586 (1997).

In this case, the petition was filed on April 18, 2011, and therefore, it is subject to the provisions of the AEDPA. The AEDPA imposes a one-year period of limitation on petitioners seeking to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). As amended, § 2244, subdivision (d) reads:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Under § 2244(d)(1)(A), the limitations period begins running on the date that the petitioner's direct review became final or the date of the expiration of the time for seeking such review. In this case, the California Supreme Court denied review on January 15, 2003. (Lodged Doc. 8.) The state appeal process became final ninety days later, on April 15, 2003, when the time for seeking certiorari with the United States Supreme Court expired. U.S. Supreme Court rule 13; Bowen v. Rowe, 188 F.3d 1157 (9th Cir. 1999). The AEDPA statute of limitations began to run the following day, on April 16, 2003. Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001).

Petitioner would have one year from April 16, 2003, absent applicable tolling, in which to file his federal petition for writ of habeas corpus. However, Petitioner delayed in filing the instant petition until April 13, 2011, almost seven years after the statute of limitations period expired. Absent the later commencement of the statute of limitations or any applicable tolling, the instant petition is barred by the statute of limitations.

**B.    Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)**

28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one year limitation period. 28 U.S.C. § 2244(d)(2). In Carey v. Saffold, the Supreme Court held the statute of limitations is tolled where a petitioner is properly pursuing post-conviction relief, and the period is tolled during the intervals between one state court's disposition of a habeas petition and the filing of a habeas petition at the next level of the state court system. 536 U.S. 214, 216 (2002); see also Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999). Nevertheless, state petitions will only toll the one-year statute of limitations under § 2244(d)(2) if the state court explicitly states that the post-conviction petition was timely or was filed within a reasonable time under state law. Pace v. DiGuglielmo, 544 U.S. 408 (2005); Evans v. Chavis, 546 U.S. 189 (2006). Claims denied as untimely or determined by the federal courts to have been untimely in state court will not satisfy the requirements for statutory tolling. Id.

1    As stated above, the statute of limitations period began on April 16, 2003. According to the state court records provided by Respondent, Petitioner filed his first petition for collateral relief, in the form of a petition for writ of habeas corpus, on February 11, 2005. (Lodged Doc. 9.) Accordingly, Petitioner failed to file any post-conviction collateral actions until nearly ten months after the statute of limitations period had expired. State petitions filed after the expiration of the statute of limitations period have no tolling effect. Ferguson v. Palmateer, 321 F.3d 820 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed.")

Petitioner contends that due to his "judicially recognized insanity status" he was prevented from discovering the "factual predicate of the claim…through the exercise of due diligence" under 28 U.S.C. § 2244(d)(1)(D). (Pet. at 8.) Petitioner argues that his insanity status impairs his "mental and emotional functioning to the point of it incapacitating petitioner's ability to rationally discover factual predicate" and therefore argues for a later commencement of the one year period of limitation. (Id.) "Section 2244(d)(1)(D) does not demand the maximum diligence possible, but only 'due' or 'reasonable' diligence." Souliotes v. Evans, 622 F.3d 1173, 1178 (9th Cir. 2010); see also Holland v. Florida, 130 S. Ct. 2549, 2565, 177 L. Ed. 2d 130 (2010). The Ninth Circuit has explained that "§ 2244(d)(1)(D)'s due diligence requirement is an objective standard that considers the petitioner's specific situation." Id. "[A] due diligence inquiry should take into account that prisoners are limited by their physical confinement." See Moore v. Knight, 368 F.3d 936, 940 (7th Cir. 2004).

However, Petitioner presents no more than general assertions that he was unaware of the factual predicate of his claims for nearly a decade due to his mental functioning. Petitioner provides no specific evidence regarding changes in his mental state to make a sufficient showing that he was unable, with reasonable diligence, to bring these claims earlier. In addition, at least as early as February 2005, Petitioner was able to articulate the factual predicate behind similar claims of sentencing error and

ineffective assistance of counsel to the state courts. (Lodged Doc. 9.) Petitioner was assisted throughout his state collateral appeals by other inmates and did file state petitions. He does not give any reason why he was unable to obtain assistance to file a federal petition within a reasonable period after exhausting his state remedies. Therefore, Petitioner provides no reason to believe that despite his confinement and mental issues, he acted with reasonable diligence to present his federal petition. Petitioner has not made a sufficient showing that he was either unaware of the factual predicate of his claims in 2005 or could not have presented them to this Court with the assistance from jailhouse lawyers at an earlier time. Petitioner is not entitled to a later commencement of the statute of limitations under 28 U.S.C. § 2244(d)(1)(D).

### C.    Equitable Tolling

The limitations period is subject to equitable tolling if the petitioner demonstrates: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); see also Irwin v. Department of Veteran Affairs, 498 U.S. 89, 96 (1990); Calderon v. U.S. Dist. Ct. (Kelly), 163 F.3d 530, 541 (9th Cir. 1998), *citing* Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir. 1996), *cert denied*, 522 U.S. 814 (1997). Petitioner bears the burden of alleging facts that would give rise to tolling. Pace, 544 U.S. at 418; Hinton v. Pac. Enters., 5 F.3d 391, 395 (9th Cir.1993).

The Ninth Circuit has determined that mental incompetence can be considered an extraordinary circumstance and can serve as a basis for equitable tolling under AEDPA. See Bills v. Clark, 628 F.3d 1092, 1100 (9th Cir. Cal. 2010); Laws v. Lamarque, 351 F.3d 919, 923 (9th Cir. 2003). Whether mental illness warrants tolling depends on whether the illness "constituted the kind of extraordinary circumstances beyond his control, making filing impossible, for which equitable tolling is available." Laws, 351 F.3d 919, 922-23 (9th Cir. 2003). The Ninth Circuit has explained that eligibility for equitable tolling due to mental impairment requires the petitioner to meet a two-part test:

(1)   First, a petitioner must show his mental impairment was an

> "extraordinary circumstance" beyond his control, by demonstrating the impairment was so severe that either
>
> > (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
> >
> > (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
>
> (2) Second, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.
>
> To reiterate: the "extraordinary circumstance" of mental impairment can cause an untimely habeas petition at different stages in the process of filing by preventing petitioner from understanding the need to file, effectuating a filing on his own, or finding and utilizing assistance to file. The "totality of the circumstances" inquiry in the second prong considers whether the petitioner's impairment was a but-for cause of any delay. Thus, a petitioner's mental impairment might justify equitable tolling if it interferes with the ability to understand the need for assistance, the ability to secure it, or the ability to cooperate with or monitor assistance the petitioner does secure. The petitioner therefore always remains accountable for diligence in pursuing his or her rights.

Bills v. Clark, 628 F.3d 1092, 1099-1100 (9th Cir. 2010) (internal citations and footnote omitted). So, in order to determine whether equitable tolling is warranted, a district court should:

> (1) find the petitioner has made a non-frivolous showing that he had a severe mental impairment during the filing period that would entitle him to an evidentiary hearing; (2) determine, after considering the record, whether the petitioner satisfied his burden that he was in fact mentally impaired; (3) determine whether the petitioner's mental impairment made it impossible to timely file on his own; and (4) consider whether the circumstances demonstrate the petitioner was otherwise diligent in attempting to comply with the filing requirements.

Id. at 1100-01.

If the petition or the record contains evidence of a period of mental incompetency, courts will generally require further factual development of the record. See Laws, 351 F.3d at 923-24 (describing extended incompetency evaluations at petitioner's trial); Rohan ex rel. Gates v. Woodford, 334 F.3d 803, 814 (9th Cir. 2003) (describing a record documenting "serious mental problems for many years"); Nara v. Frank, 264 F.3d 310, 319-20 (3d Cir. 2001), overruled in part on other grounds by Carey v. Saffold, 536 U.S. 214, 217 (2002) (evidentiary hearing warranted where evidence showed "ongoing, if not

consecutive, periods of mental incompetency"). However, when a prisoner fails to show "any causal connection" between the grounds upon which he asserts a right to equitable tolling and his inability to timely file a federal habeas application, the equitable tolling claim will be denied. Gaston v. Palmer, 417 F.3d 1030, 1034 (9th Cir. 2005) (Not clear error to find equitable tolling inapplicable where prisoner fails to show causal connection between physical and mental disabilities and inability to timely file petition.). For example, in Gaston, the 9th Circuit held that despite the petitioner's mental disabilities, an evidentiary hearing was not warranted on the issue.

> Because [petitioner] was capable of preparing and filing state court petitions on July 11, 1995 and June 9, 1997, it appears that he was capable of preparing and filing a [federal] petition during the time in between those dates. On the record presently before the court, it appears that [petitioner] was capable of preparing and filing a petition before the expiration of the statute of limitations on April 23, 1997.

Gaston, 417 F.3d at 1035.

Petitioner claims that he is entitled to equitable tolling because he has been "continuously confined, and…has persued [sic] his claims in good faith, to the limits of petitioner's ability to do so." (Pet. at 8.) However, as stated above, Petitioner must show that an "extraordinary circumstance stood in his way." Pace, 544 U.S. at 418.

Petitioner has filed seven petitions in state courts, four of which were for habeas relief, over a period of about 8 years. Petitioner has not presented any evidence that would indicate that his incompetence reached the point that it was "the kind of extraordinary circumstances beyond his control, making filing impossible, for which equitable tolling is available." Laws, 351 F.3d at 922-23. Petitioner has not shown that he was unable to "personally understand the need to timely file" or that he was "unable personally to prepare a habeas petition and effectuate its filing." Bills, 628 F.3d at 1100. In fact, Petitioner filed his state court petitions competently with assistance from other sources and, just as in Gaston, Petitioner's numerous filings to the state court show that filing a petition with this court was possible as well.

Petitioner is noted as having the assistance of "Jail-House Lawyers" in his

Superior Court habeas petition, "a friend" who wrote his Court of Appeal petition, and unspecified "help" with his Supreme Court petition. (Lodged Docs. 9-11.) Petitioner has not presented any evidence that these resources were unavailable to him in the period before or after these petitions were filed. This means that Petitioner has not demonstrated the impossibility of meeting the filing deadline, which is required by Bills in order for a Petitioner to receive equitable tolling. Bills, 628 F.3d at 1100. Petitioner was able to file state court petitions with assistance, and has presented no evidence that he lost access to that assistance or had any significant change in his mental state which made it impossible for him to file a federal petition. Petitioner bears the burden of alleging facts that would give rise to tolling. He has not made the required showing of impossibility and is not entitled to equitable tolling on the ground of mental incompetence.

Accordingly, as Petitioner is not entitled to the benefit of equitable tolling, his petition remains untimely. As the Petition is untimely, the Court shall not address the merits of Petitioner's claims.

## V. CONCLUSION

As explained above, Petitioner failed to file the instant petition for habeas corpus within the one year limitation period required by 28 U.S.C. § 2244(d). Further, Petitioner is not entitled to the benefit of statutory tolling or the later commencement of the statute of limitations period. Finally, Petitioner is not excused from timely filing due to equitable tolling.

## VI. RECOMMENDATION

Accordingly, it is hereby recommended that the petition for a writ of habeas corpus be DENIED with prejudice.

This Findings and Recommendation is submitted to the assigned District Judge, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with the Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be

captioned "Objections to Magistrate Judge's Findings and Recommendation."  Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   August 1, 2013              /s/ *Michael J. Seng*
                                    UNITED STATES MAGISTRATE JUDGE